**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anett Pierce, ) | No. CV-06-2666-PHX-NVW |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Michael J. Astrue, Commissioner of Social Security, ) | |
| Defendant. ) | |

The court has before it Plaintiff Anett Pierce's ("Pierce's") Motion for Summary Judgment (Doc. #17). Pierce's motion will be denied for the reasons set forth below, and judgment will be entered for Defendant..

**I. Background**

Pierce is a 53-year-old individual with a high school education who has previously worked as a bank teller and a customer service associate. (Tr. 26, 538.) She alleges that she has been disabled and out of work since September 12, 2001, at which time she was 46 years old. (Tr. 20.)   Pierce's primary complaint is of chronic pain afflicting her right shoulder, right knee, elbow, wrists, neck, and back. She also suffers from diabetes, depression, and anxiety disorder with panic attacks. (Tr. 21.) Pierce states that her knee, shoulder, neck, and back problems began after an automobile accident that occurred in 1998. (Tr. 542.) In November of 2000 she had surgery on her right knee for a torn medial meniscus and

chondromalacia patella. (Tr. 536.) The following month she had surgery on her right shoulder for a glenoid labrum tear, impingement syndrome, and degenerative acromioclavicular joint. (Tr. 526.) In May of 2002 she had a second shoulder operation resulting in a diagnosis of adhesive capsulitis. (Tr. 516–18.) Pierce was diagnosed with moderate right and mild left carpal tunnel syndrome in December of 2001 and subsequently underwent surgical releases in 2003. (Tr. 165, 386, 400.)

In addition to these surgical procedures, for many years Pierce has been under the general care of her family physician, Dr. Kevin Turner, and under the care of Dr. Richard Emerson for her orthopedic maladies. She has received Hyalgen shots for persistent knee pain, physical therapy following her surgeries, and has undergone a number of diagnostic x-ray and MRI scans to pinpoint the causes of her pain. Based upon their experience with Pierce, her treating physicians concluded that she has an extremely limited residual functional capacity of less than sedentary work and is "disabled." (Tr. 112, 121–22, 123–25, 134–44, 475–477, 489–91, 497–500.)

Pierce underwent an independent consultative examination by Dr. Richard Collins in 2001. Dr. Collins stated that Pierce's subjective symptoms outweigh the objective evidence of impairment. (Tr. 172.) In December 2003, Dr. Atul Patel performed a consultative physical examination on Pierce on behalf of the State. He reported finding only mild degenerative changes in the medial joint compartment of her right knee, that she had a normal based and not antalgic gait, that she had full range of motion with no warmth, swelling or discoloration, and that there was no ligament instability. With respect to her right shoulder, he reported discomfort only with range of motion in the extremes and slightly limited abduction. His report showed mild lateral elbow tenderness over the epicondyle, mild discomfort with forceful provocations, reasonably maintained grip, and negative Phalen's and Tinel's testing for carpal tunnel syndrome. X-rays of her cervical spine show only mild degenerative disc disease at C5-C6 and C6-C7. Based upon this examination, Dr. Patel concluded that Pierce can lift ten pounds occasionally and less than ten pounds frequently. He also concluded that she can walk or stand two hours and, with occasional

1  changes in position, can sit six hours in an eight hour work day. (Tr. 415–20.)  In 2004,
2  subsequent non-examining physicians agreed with Dr. Patel's and disagreed with the treating
3  physicians' conclusions regarding Pierce's residual functional capacity.  (Tr. 421–28,
4  444–51.)

5  **II.    Procedural History**

6  On June 30, 2003, Plaintiff protectively filed an application for disability insurance
7  benefits, alleging a September 12, 2001 disability onset. (Tr. 20.)  The application was
8  denied initially and on reconsideration. (Tr. 29–42.)  On March 1, 2006, Plaintiff appeared
9  with counsel and testified before an administrative law judge (ALJ). (Tr. 533–58.)  In a
10 decision dated May 22, 2006, the ALJ found that Plaintiff was not disabled. (Tr. 18–28.)
11 The ALJ determined that Pierce has a "severe impairment" due to the combination of her
12 knee, shoulder, elbow, back, and neck problems, but that none of her impairments meet the
13 criteria for any listed impairments under 20 C.F.R. § 404, Subpart P, Appendix 1. Based
14 upon his review of the objective evidence, the ALJ determined that Pierce's allegations
15 concerning the severity of her pain were not fully credible.  He also disagreed with the
16 conclusions of Pierce's treating, examining, and non-examining physicians on the subject of
17 her residual functional capacity.

18 The ALJ assessed a residual functional capacity to perform light exertion work with
19 the following restrictions:  lifting more than twenty pounds frequently and twenty pounds
20 occasionally; working with a "sit/stand option"; no climbing, crawling, crouching, squatting,
21 kneeling, using her lower extremities for pushing or pulling, or using her upper extremities
22 for work above the shoulder level.  (Tr. 21.)  Based upon this residual functional capacity,
23 the ALJ concluded that Pierce could not return to her past work because it was skilled and
24 did not allow for a sit/stand option. (Tr. 26.)  A vocational expert testified that some of the
25 skills Pierce obtained while working as a bank teller and customer service associate would
26 transfer to certain semi-skilled sedentary jobs. (Tr. 553).  In particular, with the assistance
27 of the vocational expert, the ALJ concluded that Pierce is able to perform the sedentary jobs
28 of billing clerk, payroll clerk, calculating machine operator, and customer service

1  representative, and the light exertion jobs of office helper, unarmed gate guard, and
2  receptionist. Because a significant number of these jobs exist in the economy, the ALJ
3  concluded that Pierce is not disabled within the meaning of the Social Security Act. (Tr.
4  26–27.) The Appeals Council denied Pierce's request for review of the ALJ's decision (Tr.
5  8–10), and Pierce commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

## III. Standard of Review

The court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). In its review, the court "may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citations omitted); *see Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995) (citations omitted). Such evidence is "more than a scintilla" but "less than a preponderance." *Smolen*, 80 F.3d at 1279 (citations omitted). "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.* at 954 (citations omitted). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## IV. Analysis

Pierce alleges that the ALJ's decision was deficient because 1) her impairments do equal the severity requirements for listed orthopedic impairments under the statute; 2) the

ALJ's residual functional capacity assessment is inconsistent with his conclusion that she requires a sit/stand option and with the job descriptions contained in the Dictionary of Occupational Titles; 3) the ALJ failed to credit her subjective complaint and pain testimony; and 4) the ALJ improperly rejected the opinions of the treating, examining, and non-examining physicians.

**A.  The ALJ did not err in concluding that Pierce's impairments fall short of the severity requirements for the listed impairments.**

Pierce argues that her impairments meet the severity requirements of the orthopedic impairments listed under 20 C.F.R. § 404, Subpart P, Appendix 1. Specifically, she contends that her impairments meet the requirements for major dysfunction of 1) a weight-bearing joint resulting in inability to ambulate effectively, §1.02A; and 2) one major peripheral joint in each upper extremity resulting in inability to perform fine and gross movements effectively, §1.02B.  With respect to major dysfunction of a weight-bearing joint, she claims she has demonstrated an inability to ambulate effectively solely because every physician has agreed that she "cannot stand on her feet for a sustained period of time and, in total, cannot stand more than 6 hours."  Pierce overlooks that the definition of "ambulate effectively" in the statute requires her to show that she cannot "sustain[] a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living . . . such as shopping." 20 C.F.R. § 404, Subpart P, Appendix 1 §1.00.B.2.b.(2).  She has not made any such showing and, moreover, the ALJ pointed out that Pierce goes grocery shopping with her husband.

The listing for upper extremities would require Pierce to show some evidence that she cannot carry out "activities of daily living," such as evidence of an "inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, [and] the inability to sort and handle papers." §1.00.B.2.c.  Pierce does not make any such showing. Instead, she states conclusorily that she is unable to perform fine and gross movements effectively.  The ALJ's findings that Pierce undertakes activities of daily living, such as feeding herself, going grocery shopping, and doing her own banking, amply support his conclusion that Pierce's condition does not meet the requirements for this or any listing.

**B.  The ALJ's residual functional capacity assessment is not inconsistent internally or with the Dictionary of Occupational Titles.**

Pierce next challenges the ALJ's finding that she is able to work as a billing clerk, payroll clerk, calculating machine operator, customer service representative, office helper, unarmed gate guard, or receptionist. The ALJ decided that Pierce cannot perform her past jobs of bank teller or customer service associate because these jobs do not have sit/stand options. Pierce points out that the vocational consultant also testified that a billing clerk, payroll clerk, calculating machine operator, and customer service representative do "not [have] a sit/stand option but certainly if you need to stand for a moment or two and then get down you could." She contends that because the ALJ concluded that she cannot perform her past work because of the lack of a sit/stand option, she also cannot perform the other work identified by the ALJ either.

The term "sit/stand option" appears nowhere in the Social Security Act, the regulations, or the Dictionary of Occupational Titles (DOT). Pierce has not furnished a definition of "sit/stand option," nor has she directed the court to any relevant case that could clarify the ambiguous term. The court is left to guess the meaning and importance of a sit/stand option. Whatever the term means, it is clear from the vocational consultant's testimony that bank tellers and customer service associates are primarily standing positions, and therefore inappropriate for Pierce's knee condition. (Tr. 552–53.) On the other hand, the occupations identified by the ALJ are primarily sedentary jobs that would allow Pierce to stand and change position occasionally, which is consistent with the residual functional capacity propounded by the ALJ and by Dr. Patel. The ALJ therefore had substantial evidence to conclude that Pierce could no longer perform her previous standing intensive jobs because she needs the option to sit, but could perform the identified sedentary jobs so long as she had some opportunity to stand occasionally.

Pierce also alleges a discrepancy between the vocational consultant's testimony and the DOT descriptions of office helper, unarmed gate guard, and receptionist. However, as pointed out by Defendant, Pierce never states the nature of the alleged discrepancy. The

1 court need not delve into the DOT and the hearing transcript to make Pierce's argument for
2 her. Even so, based upon a reading of the DOT and the trial transcript, the court perceives
3 no discrepancy between the DOT and the vocational consultant that the ALJ should have
4 explained.

### C. The ALJ gave clear and convincing reasons based upon substantial evidence for discounting Pierce's subjective complaint and pain testimony.

Plaintiff next argues that the ALJ erred in rejecting his pain testimony. Pain of sufficient severity caused by a medically diagnosed "anatomical, physiological, or psychological abnormalit[y]" may provide the basis for determining that a claimant is disabled. 42 U.S.C. § 423(d)(5)(A); *see Bunnell v. Sullivan,* 947 F.2d 341, 344–45 (9th Cir. 1991) (en banc). If a claimant "has presented objective evidence that he suffers from an impairment that could cause pain, he need not present medical evidence to support the severity of the pain." *Chavez v. Sec'y of Health & Human Servs.*, 103 F.3d 849, 853 (9th Cir. 1996). Thus, "the court may not as a matter of law discount the claimant's testimony about his pain solely because it is not corroborated by medical findings." *Id.* (citing *Bunnell*, 947 F.2d at 346).

"Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* He may consider various factors, including the claimant's daily activities, effectiveness of pain medication, and relevant character evidence. *Bunnell*, 947 F.2d at 346; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (listing similar factors considered by the ALJ in assessing a claimant's credibility). "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In addition, the ALJ may consider the claimant's work record, observations of

treating or examining physicians and other third parties, precipitating and aggravating factors, and functional restrictions caused by the symptoms. *Smolen*, 80 F.3d at 1284.

Pierce has presented objective medical evidence that she suffers from impairments that could cause pain. The ALJ did not entirely reject Pierce's claimed pain, but rather did not "fully credit" her allegations. The ALJ somewhat credited her pain testimony by placing restrictions on her ability to perform light exertion work, and by finding that she requires a sit/stand option.

In coming to this conclusion, the ALJ sequentially and thoroughly compared Plaintiff's complaints regarding pain in her knee, shoulder, wrists, neck, and back with the objective clinical evidence of impairment produced by her treating and examining physicians. In each case, the ALJ found that the evidence did not support her allegations of disabling pain because the degree of underlying impairment was inconsistent with the claimed degree of pain. Furthermore, the ALJ found numerous other inconsistencies with her claimed degree of pain, including her failure to seek further treatment for her knee and shoulder complaints, the conservative nature of the treatment she was prescribed for her neck and back, and her ability to engage in daily activities, such as driving, cooking, ironing, doing laundry, and shopping for groceries. Such reasons taken together constitute clear and convincing reasons for discrediting Pierce's pain testimony. *Burch*, 400 F.3d at 681.

**D.     The ALJ provided specific, legitimate reasons for rejecting the treating, examining, and non-examining physician's conclusions.**

This is a case of conflicting medical opinions. Whereas Pierce's treating physicians believe that she is disabled and has a residual functional capacity of less than sedentary work, the examining consulting physician Dr. Patel and the non-examining reviewing physicians concluded that she has a residual functional capacity consistent with sedentary work. Additionally, Pierce's treating physicians' opinions conflict with the finding of the independent consultative examiner, Dr. Collins, that Pierce's subjective symptoms outweigh the objective and clinical evidence.

- 8 -

When presented with such a case, "the ALJ must determine credibility and resolve the conflict." *Batson v. Comm'r of the Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted). Greater weight is typically afforded to the opinion of a treating physician because he "is employed to cure and has a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citations omitted). However, the treating physician's opinion "is not binding on an ALJ." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Where there is a conflict between the opinion of a treating physician and an examining physician, as here, "the ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician." *Batson*, 359 F.3d at 1195 (citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). The ALJ must explain his departure from the opinion of a treating physician even as to "ultimate conclusions," such as residual functional capacity or legal disability, which are purportedly reserved to the Commissioner. *See, e.g.*, *Morgan v. Apfel*, 169 F.3d 595, 601 (9th Cir. 1999); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Roberts v. Shalala*, 66 F.3d 179, 183–84 (9th Cir. 1995); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (noting that the "subjective judgments of treating physicians are important, and properly play a part in their medical evaluations"); *Cotton*, 799 F.2d at 1408.

The ALJ made a detailed summary of the objective medical findings and compared them to each doctor's ultimate conclusions on residual functional capacity. After summarizing the objective medical evidence available for each of Pierce's impairments, he noted that Dr. Emmerson's and Dr. Turner's opinions were either entirely unsupported by any objective evidence, were inconsistent with their own clinical findings, or conflicted with the findings of the consulting physicians and Dr. Collins. Because the treating physician's opinions were unsupported by the medical evidence, the ALJ stated that they were likely based upon their acceptance of Pierce's subjective complaints, which the ALJ had already

- 9 -

properly discounted. These are specific, legitimate reasons for rejecting the treating physicians' opinions on Pierce's residual functional capacity. *Batson*, 359 F.3d at 1194–95; *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602 (9th Cir. 1999).

The ALJ also rejected Dr. Patel's and the non-examining consulting physicians' conclusions that Pierce can only stand for two hours out of an eight hour day and can only lift ten pounds occasionally. He did so based upon Dr. Patel's physical evaluation, which showed that Pierce had mild symptoms in her upper extremities, a normal gate, full ranges of motion and no warmth, swelling, discoloration, or instability in the knees, and normal neurological evaluations. Again, an ALJ "may discredit [even] treating physicians' opinions that are . . . unsupported by the record as a whole or by objective medical findings." *Batson*, 359 F.3d at 1195 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). It therefore follows that the ALJ can reject the examining and non-examining consulting physicians' opinions for the same reasons.

The residual functional capacity assessment of the examining and non-examining consulting physicians placed Pierce at a sedentary level of work, while the ALJ concluded that Pierce could perform light work with limitations. Contrary to Pierce's claim, even if the ALJ had accepted that she could only perform sedentary work, the Medical-Vocational Grids would not have conclusively deemed her disabled. Rather, the vocational expert testified that skills Pierce acquired during her previous work would transfer to other semi-skilled sedentary jobs, such as billing clerk, payroll clerk, calculating machine operator, and customer service representative. According to Medical-Vocational Rule 201.15, an individual closely approaching advanced age with a high school education, transferrable skills, and a residual functional capacity for sedentary work is not deemed disabled. 20 C.F.R. § 404, Sub. P, App. 2 § 201.15. The ALJ did not err in assessing a residual functional capacity different than the examining consulting physician, but even if he did, that error was inconsequential to the ultimate nondisability determination because even at a sedentary work level she would not be deemed disabled. There is therefore no need to

disturb the ALJ's decision on this ground. *See Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1054–56 (9th Cir. 2006).

IT IS THEREFORE ORDERED that Plaintiff Anett Pierce's Motion for summary Judgment (Doc. #17) is denied.

IT IS FURTHER ORDERED that the clerk enter judgment for the Defendant and terminate the case.

DATED this 26th day of October, 2007.

_____
Neil V. Wake
United States District Judge