1  **WO**

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

8

9  Anett Pierce,                          )    No. CV-06-2666-PHX-NVW
                                          )
10            Plaintiff,                   )    **ORDER**
                                          )
11  vs.                                    )
                                          )
12                                         )
    Michael J. Astrue, Commissioner of Social)
13  Security,                              )
                                          )
14            Defendant.                   )
                                          )
15  _____   )

16

17         The court has before it Plaintiff Anett Pierce's ("Pierce's") Motion for Summary

18  Judgment (Doc. #17).  Pierce's motion will be denied for the reasons set forth below, and

19  judgment will be entered for Defendant.

    **I.    Background**
20
           Pierce is a 53-year-old individual with a high school education who has previously
21
    worked as a bank teller and a customer service associate. (Tr. 26, 538.)  She alleges that she
22
    has been disabled and out of work since September 12, 2001, at which time she was 46 years
23
    old.  (Tr. 20.)   Pierce's primary complaint is of chronic pain afflicting her right shoulder,
24
    right knee, elbow, wrists, neck, and back.  She also suffers from diabetes, depression, and
25
    anxiety disorder with panic attacks. (Tr. 21.) Pierce states that her knee, shoulder, neck, and
26
    back problems began after an automobile accident that occurred in 1998.  (Tr. 542.)  In
27
    November of 2000 she had surgery on her right knee for a torn medial meniscus and
28

1   chondromalacia patella.  (Tr. 536.)   The following month she had surgery on her right

2   shoulder for a glenoid labrum tear, impingement syndrome, and degenerative

3   acromioclavicular joint.  (Tr. 526.)   In May of 2002 she had a second shoulder operation

4   resulting in a diagnosis of adhesive capsulitis.  (Tr. 516–18.)   Pierce was diagnosed with

5   moderate right and mild left carpal tunnel syndrome in December of 2001 and subsequently

6   underwent surgical releases in 2003.  (Tr. 165, 386, 400.)

7        In addition to these surgical procedures, for many years Pierce has been under the

8   general care of her family physician, Dr. Kevin Turner, and under the care of Dr. Richard

9   Emerson for her orthopedic maladies.  She has received Hyalgen shots for persistent knee

10  pain, physical therapy following her surgeries, and has undergone a number of diagnostic X-

11  ray and MRI scans to pinpoint the causes of her pain.  Based upon their experience with

12  Pierce, her treating physicians concluded that she has an extremely limited residual

13  functional capacity of less than sedentary work and is "disabled."  (Tr. 112, 121–22, 123–25,

14  134–44, 475–477, 489–91, 497–500.)

15       Pierce underwent an independent consultative examination by Dr. Richard Collins in

16  2001.  Dr. Collins stated that Pierce's subjective symptoms outweigh the objective evidence

17  of impairment.  (Tr. 172.)   In December 2003, Dr. Atul Patel performed a consultative

18  physical examination on Pierce on behalf of the State.  He reported finding only mild

19  degenerative changes in the medial joint compartment of her right knee, that she had a

20  normal based and not antalgic gait, that she had full range of motion with no warmth,

21  swelling or discoloration, and that there was no ligament instability.  With respect to her right

22  shoulder, he reported discomfort only with range of motion in the extremes and slightly

23  limited abduction.  His report showed mild lateral elbow tenderness over the epicondyle,

24  mild discomfort with forceful provocations, reasonably maintained grip, and negative

25  Phalen's and Tinel's testing for carpal tunnel syndrome. X-rays of her cervical spine showed

26  only mild degenerative disc disease at C5-C6 and C6-C7.  Based upon this examination, Dr.

27  Patel concluded that Pierce can lift ten pounds occasionally and less than ten pounds

28  frequently.  He also concluded that she can walk or stand two hours and, with occasional

1  changes in position, can sit six hours in an eight hour work day.  (Tr. 415–20.)  In 2004,

2  subsequent non-examining physicians agreed with Dr. Patel's and disagreed with the treating

3  physicians' conclusions regarding Pierce's residual functional capacity.  (Tr. 421–28,

4  444–51.)

5  **II.     Procedural History**

6        On June 30, 2003, Plaintiff protectively filed an application for disability insurance

7  benefits, alleging a September 12, 2001 disability onset.  (Tr. 20.)  The application was

8  denied initially and on reconsideration.  (Tr. 29–42.)  On March 1, 2006, Plaintiff appeared

9  with counsel and testified before an administrative law judge (ALJ). (Tr. 533–58.)  In a

10  decision dated May 22, 2006, the ALJ found that Plaintiff was not disabled.  (Tr. 18–28.)

11  The ALJ determined that Pierce has a "severe impairment" due to the combination of her

12  knee, shoulder, elbow, back, and neck problems, but that none of her impairments meet the

13  criteria for any listed impairments under 20 C.F.R. § 404, Subpart P, Appendix 1.  Based

14  upon his review of the objective evidence, the ALJ determined that Pierce's allegations

15  concerning the severity of her pain were not fully credible.  He also disagreed with the

16  conclusions of Pierce's treating, examining, and non-examining physicians on the subject of

17  her residual functional capacity.

18        The ALJ assessed a residual functional capacity to perform unskilled to semi-skilled

19  light exertion work with the following restrictions:   lifting more than twenty pounds

20  frequently and twenty pounds occasionally; working with a "sit/stand option"; no climbing,

21  crawling, crouching, squatting, kneeling, using her lower extremities for pushing or pulling,

22  or using her upper extremities for work above the shoulder level.  (Tr. 21.)  Based upon this

23  residual functional capacity, the ALJ concluded that Pierce could not return to her past work

24  because it was skilled and did not allow for a sit/stand option.  (Tr. 26.)  A vocational expert

25  testified that some of the skills Pierce obtained while working as a bank teller and customer

26  service associate would transfer to certain semi-skilled sedentary jobs.  (Tr. 553).  In

27  particular, with the assistance of the vocational expert, the ALJ concluded that Pierce is able

28  to perform the sedentary jobs of billing clerk, payroll clerk, calculating machine operator,

1   and customer service representative, and the light exertion jobs of office helper, unarmed

2   gate guard, and receptionist.   Because a significant number of these jobs exist in the

3   economy, the ALJ concluded that Pierce is not disabled within the meaning of the Social

4   Security Act.  (Tr. 26–27.)   The Appeals Council denied Pierce's request for review of the

5   ALJ's decision (Tr. 8–10), and Pierce commenced this action for judicial review pursuant

6   to 42 U.S.C. § 405(g).

7   **III.    Standard of Review**

8          The court reviews only those issues raised by the party challenging the ALJ's

9   decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  In its review, the court

10  "may set aside a denial of disability benefits only if it is not supported by substantial

11  evidence or if it is based on legal error." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir.

12  1997) (citations omitted); *see Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

13  "Substantial evidence is relevant evidence which, considering the record as a whole, a

14  reasonable person might accept as adequate to support a conclusion."  *Flaten v. Sec'y of*

15  *Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995) (citations omitted).   Such

16  evidence is "more than a scintilla" but "less than a preponderance." *Smolen*, 80 F.3d at 1279

17  (citations omitted).  "The opinions of non-treating or non-examining physicians may also

18  serve as substantial evidence when the opinions are consistent with independent clinical

19  findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

20  2002). As a general rule, "[w]here the evidence is susceptible to more than one rational

21  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be

22  upheld." *Id.* at 954 (citations omitted).  In reviewing the ALJ's reasoning, the court is "not

23  deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's

24  opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

25

26

27

28

1  **IV.    Analysis**

2          Pierce alleges that the ALJ's decision was deficient because 1) her impairments do

3  equal the severity requirements for listed orthopedic impairments under the statute; 2) the

4  ALJ's residual functional capacity assessment is inconsistent with his conclusion that she

5  requires a sit/stand option and with the job descriptions contained in the Dictionary of

6  Occupational Titles; 3) the ALJ failed to credit her subjective complaint and pain testimony;

7  and 4) the ALJ improperly rejected the opinions of the treating, examining, and non-

8  examining physicians.

9          **A.    The ALJ did not err in concluding that Pierce's impairments fall
               short of the severity requirements for the listed impairments.**

10

           Pierce argues that her impairments meet the severity requirements of the orthopedic

11
   impairments listed under 20 C.F.R. § 404, Subpart P, Appendix 1.  Specifically, she contends

12
   that her impairments meet the requirements for major dysfunction of 1) a weight-bearing

13
   joint resulting in inability to ambulate effectively, §1.02A; and 2) one major peripheral joint

14
   in each upper extremity resulting in inability to perform fine and gross movements

15
   effectively, §1.02B.  With respect to major dysfunction of a weight-bearing joint, she claims

16
   she has demonstrated an inability to ambulate effectively because every physician has agreed

17
   that she "cannot stand on her feet for a sustained period of time and, in total, cannot stand

18
   more than 6 hours."  She also has provided a chart listing the various clinical findings in the

19
   record related to her knee.

20
           Pierce overlooks that the definition of "ambulate effectively" in the statute requires

21
   her to show that she cannot "sustain[] a reasonable walking pace over a sufficient distance

22
   to be able to carry out activities of daily living . . . such as shopping."  20 C.F.R. § 404,

23
   Subpart P, Appendix 1 §1.00.B.2.b.(2).  The ALJ accepted the clinical findings of Dr. Patel,

24
   which showed only mild degenerative changes in her right knee, that she could walk

25
   unassisted, and that she had a normal based and not antalgic gait.  Further, the ALJ pointed

26
   out that Pierce goes grocery shopping with her husband.  He therefore correctly concluded

27
   that Pierce does not meet or equal the requirements for this listing.

28

1
2
3
4
5
6
7
8

      The listing for upper extremities would require Pierce to show some evidence that she cannot carry out "activities of daily living," such as evidence of an "inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, [and] the inability to sort and handle papers." §1.00.B.2.c.  Pierce does not make any such showing. Instead, she states conclusorily that she is unable to perform fine and gross movements effectively.  The ALJ's findings that Pierce undertakes activities of daily living, such as feeding herself, going grocery shopping, and doing her own banking, amply support his conclusion that Pierce's condition does not meet the requirements for this or any listing.

9
10

    **B.**    **The ALJ's residual functional capacity assessment is not inconsistent internally or with the Dictionary of Occupational Titles.**

11
12
13
14
15
16
17
18
19
20

      Pierce next challenges the ALJ's finding that she is able to work as a billing clerk, payroll clerk, calculating machine operator, customer service representative, office helper, unarmed gate guard, or receptionist.  The ALJ decided that Pierce cannot perform her past jobs of bank teller or customer service associate because these jobs do not have sit/stand options.  Pierce points out that the vocational consultant also testified that a billing clerk, payroll clerk, calculating machine operator, and customer service representative do "not [have] a sit/stand option but certainly if you need to stand for a moment or two and then get down you could."  She contends that because the ALJ concluded that she cannot perform her past work because of the lack of a sit/stand option, she also cannot perform the other work identified by the ALJ either.

21
22
23
24
25
26
27

      It is clear from the vocational consultant's testimony that bank tellers and customer service associates are primarily standing positions, and therefore inappropriate for Pierce's knee condition.  (Tr. 552–53.)  On the other hand, the occupations identified by the ALJ are primarily sedentary jobs that would allow Pierce to stand and change position occasionally, which is consistent with the residual functional capacity propounded by the ALJ and by Dr. Patel.  The ALJ therefore had substantial evidence to conclude that Pierce could no longer perform her previous standing intensive jobs because she needs the option to sit, but could

28

- 6 -

1   perform the identified sedentary jobs so long as she had some opportunity to stand

2   occasionally.

3        Pierce also alleges that the ALJ's conclusion that she can perform the jobs of unarmed

4   gate guard and receptionist conflicts with his residual functional capacity assessment and the

5   DOT.  She claims that the DOT defines unarmed gate guard and receptionist jobs to be semi-

6   skilled, and that the ALJ assessed a residual functional capacity for only unskilled work.

7   That is not the case.  The ALJ concluded that Pierce has the capacity to perform unskilled

8   to semi-skilled work.  Because unarmed gate guard and receptionist jobs are semi-skilled, the

9   ALJ's conclusion that she can perform those jobs does not conflict with his residual

10  functional capacity assessment.

11       **C.    The ALJ gave clear and convincing reasons based upon substantial
          evidence for discounting Pierce's subjective complaint and pain
12        testimony.**

13       Plaintiff next argues that the ALJ erred in rejecting her pain testimony.  Pain of

14  sufficient severity caused by a medically diagnosed "anatomical, physiological, or

15  psychological abnormalit[y]" may provide the basis for determining that a claimant is

16  disabled.  42 U.S.C. § 423(d)(5)(A); *see Bunnell v. Sullivan,* 947 F.2d 341, 344–45 (9th Cir.

17  1991) (en banc).  If a claimant "has presented objective evidence that he suffers from an

18  impairment that could cause pain, he need not present medical evidence to support the

19  severity of the pain."  *Chavez v. Sec'y of Health & Human Servs.*, 103 F.3d 849, 853 (9th

20  Cir. 1996).  Thus, "the court may not as a matter of law discount the claimant's testimony

21  about his pain solely because it is not corroborated by medical findings."  *Id.* (citing *Bunnell*,

22  947 F.2d at 346).

23       "Unless there is affirmative evidence showing that the claimant is malingering, the

24  Commissioner's reasons for rejecting the claimant's testimony must be 'clear and

25  convincing.'"  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are

26  insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

27  undermines the claimant's complaints."  *Id.*  He may consider various factors, including the

28  claimant's daily activities, effectiveness of pain medication, and relevant character evidence.

1   *Bunnell*, 947 F.2d at 346; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (listing similar

2   factors considered by the ALJ in assessing a claimant's credibility).  "Although lack of

3   medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that

4   the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th

5   Cir. 2005).  In addition, the ALJ may consider the claimant's work record, observations of

6   treating or examining physicians and other third parties, precipitating and aggravating

7   factors, and functional restrictions caused by the symptoms.  *Smolen*, 80 F.3d at 1284.

8   Pierce has presented objective medical evidence that she suffers from impairments

9   that could cause pain.  The ALJ did not entirely reject Pierce's claimed pain, but rather did

10   not "fully credit" her allegations.  The ALJ somewhat credited her pain testimony by placing

11   restrictions on her ability to perform light exertion work, and by finding that she requires a

12   sit/stand option.

13   In coming to this conclusion, the ALJ sequentially and thoroughly compared

14   Plaintiff's complaints regarding pain in her knee, shoulder, wrists, neck, and back with the

15   objective clinical evidence of impairment produced by her treating and examining

16   physicians.  In each case, the ALJ found that the evidence did not support her allegations of

17   disabling pain because the degree of underlying impairment was inconsistent with the

18   claimed degree of pain.  Furthermore, the ALJ found numerous other inconsistencies with

19   her claimed degree of pain, including her failure to seek further treatment for her knee and

20   shoulder complaints, *Burch*, 400 F.3d at 681, the conservative nature of the treatment she

21   was prescribed for her neck and back, *Parra v. Astrue*, 481 F.3d 742,750–51 (9 Cir. 2007),

22   and her ability to engage in daily activities, such as exercising, driving, cooking, ironing,

23   doing laundry, and shopping for groceries, *Burch*, 400 F.3d at 680–81.  *See also Thomas v.*

24   *Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002) (holding that an ALJ may consider a

25   claimant's professed ability to perform daily activities, such as cooking, housekeeping,

26   laundry, and shopping, when making a credibility determination as to pain); *Rollins v.*

27

28

1   *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (same).  Such reasons taken together constitute

2   clear and convincing reasons for discrediting Pierce's pain testimony.

3           **D.      The ALJ provided specific, legitimate reasons for rejecting  the treating,**
            **examining, and non-examining physician's conclusions.**
4

5           This is a case of conflicting medical opinions.  Whereas Pierce's treating physicians

6   believe that she is disabled and has a residual functional capacity of less than sedentary work,

7   the examining consulting physician Dr. Patel and the non-examining reviewing physicians

8   provided independent clinical findings and concluded that she has a residual functional

9   capacity consistent with sedentary work.  Additionally, Pierce's treating physicians' opinions

10  conflict with the finding of the independent consultative examiner, Dr. Collins, that Pierce's

11  subjective symptoms outweigh the objective and clinical evidence.   The ALJ therefore

12  properly concluded that Pierce's treating physicians' opinions were not entitled to controlling

13  weight.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

14          Even where contradicted, greater weight is typically afforded to the opinion of a

15  treating physician, *id.* at 632–33, because he "is employed to cure and has a greater

16  opportunity to observe and know the patient as an individual," *Sprague v. Bowen*, 812 F.2d

17  1226, 1230 (9th Cir. 1987) (citations omitted).  However, the treating physician's opinion

18  "is not binding on an ALJ."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

19  Where there is a conflict between the opinion of a treating physician and an examining

20  physician, as here, "the ALJ must give specific, legitimate reasons for disregarding the

21  opinion of the treating physician."  *Batson*, 359 F.3d at 1195 (citation omitted).  "The ALJ

22  can meet this burden by setting out a detailed and thorough summary of the facts and

23  conflicting clinical evidence, stating his interpretation thereof, and making findings."

24  *Magallanes*, 881 F.2d at 751 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

25  The ALJ must explain his departure from the opinion of a treating physician even as to

26  "ultimate conclusions," such as residual functional capacity or legal disability, which are

27  purportedly reserved to the Commissioner.  *See, e.g.*, *Morgan v. Apfel*, 169 F.3d 595, 601

28  (9th Cir. 1999); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Roberts v. Shalala*, 66

- 9 -

1  F.3d 179, 183–84 (9th Cir. 1995); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)

2  (noting that the "subjective judgments of treating physicians are important, and properly play

3  a part in their medical evaluations"); *Cotton*, 799 F.2d at 1408.

4  The ALJ made a detailed summary of the objective medical findings and compared

5  them to each doctor's ultimate conclusions on residual functional capacity. After

6  summarizing the objective medical evidence available for each of Pierce's impairments, he

7  noted that Dr. Emmerson's and Dr. Turner's opinions were unsupported by any objective

8  evidence, were inconsistent with their own clinical findings, and conflicted with the

9  independent findings of the consulting physicians and Dr. Collins. Because the treating

10 physicians' opinions were unsupported by the medical evidence, the ALJ stated that they

11 were likely based upon their acceptance of Pierce's subjective complaints, which the ALJ

12 had already properly discounted. These are specific, legitimate reasons for rejecting the

13 treating physicians' opinions on Pierce's residual functional capacity. *Orn,* 495 F.3d at 631

14 ("[F]actors relevant to evaluating . . . the opinion of the treating physician, include the

15 amount of relevant evidence that supports the opinion and the quality of the explanation

16 provided [and] the consistency of the medical opinion with the record as a whole."); *Bayliss

17 v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that even where the ultimate

18 opinion of a treating physician is uncontradicted by other medical opinions in the record, the

19 ALJ may reject that opinion if it is contradicted by the physician's own clinical findings);

20 *Batson*, 359 F.3d at 1194–95; *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602 (9th Cir.

21 1999).

22 The ALJ also rejected Dr. Patel's and the non-examining consulting physicians'

23 conclusions that Pierce can only stand for two hours out of an eight hour day and can only

24 lift ten pounds occasionally. He did so based upon Dr. Patel's physical evaluation, which

25 showed that Pierce had mild symptoms in her upper extremities, a normal gate, full ranges

26 of motion and no warmth, swelling, discoloration, or instability in the knees, and normal

27 neurological evaluations. Again, an ALJ "may discredit [even] treating physicians' opinions

28

1  that are . . . unsupported by the record as a whole or by objective medical findings." *Batson*,

2  359 F.3d at 1195 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)).   It

3  therefore follows that the ALJ can reject the examining and non-examining consulting

4  physicians' opinions for the same reasons.

5        The residual functional capacity assessment of the examining and non-examining

6  consulting physicians placed Pierce at a sedentary level of work, while the ALJ concluded

7  that Pierce could perform light work with limitations.  Contrary to Pierce's claim, even if the

8  ALJ had accepted that she could only perform sedentary work, the Medical-Vocational Grids

9  would not have conclusively deemed her disabled.  Rather, the vocational expert testified that

10 skills Pierce acquired during her previous work would transfer to other semi-skilled

11 sedentary jobs, such as billing clerk, payroll clerk, calculating machine operator, and

12 customer service representative.   According to Medical-Vocational Rule 201.15, an

13 individual closely approaching advanced age with a high school education, transferrable

14 skills, and a residual functional capacity for sedentary work is not deemed disabled.  20

15 C.F.R. § 404, Sub. P, App. 2 § 201.15.   The ALJ did not err in assessing a residual

16 functional capacity different than the examining consulting physician, but even if he did, that

17 error was inconsequential to the ultimate nondisability determination because even at a

18 sedentary work level she would not be deemed disabled.  There is therefore no need to

19 disturb the ALJ's decision on this ground. *See Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050,

20 1054–56 (9th Cir. 2006).

21       IT IS THEREFORE ORDERED that Plaintiff Anett Pierce's Motion for summary

22 Judgment (Doc. #17) is denied.

23       IT IS FURTHER ORDERED that the clerk enter judgment for the Defendant and

24 terminate the case.

25

26       DATED this 7th day of January, 2008.

27                                                    Neil V. Wake
                                                     United States District Judge
28

- 11 -